**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEVIN BERDIN, | : | CIVIL ACTION NO.: |
| 5801 Pinesdale Place, | : | |
| Westerville, OH 43081 | : | |
| | : | JUDGE: |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SMILE CDR, INC. | : | |
| d/b/a Smile Digital Health, | : | |
| 2021 Guadalupe Street, Suite 260 | : | |
| Austin, TX 78705 | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT**

**I.      Preliminary Statement**

1.      This action seeks economic, compensatory, and punitive damages; declaratory, injunctive and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violations of the Reconstruction Civil Rights Act, 42 U.S.C. §1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*; and the Ohio Laws Against Discrimination, R.C. Ch. 4112.

**II.      Jurisdiction and Venue**

2.      Plaintiffs bring race discrimination, harassment, and retaliation claims under the Reconstruction Civil Rights Act, 42 U.S.C. §1981; Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; and the Ohio Laws Against Discrimination, R.C. 4112.99.

3.      This Court has jurisdiction by virtue of 28 U.S.C. § 1331 (federal question); 1343 (civil rights); 1367 (supplemental jurisdiction); and  28 U.S.C. § 1332 (diversity jurisdiction).

4.      Based on a timely-filed charge affidavit, Plaintiff received a Right-to-Sue Letter from the Ohio Civil Rights Commission less than 90 days ago.

1

5. Declaratory, injunctive, and equitable relief, including reinstatement, are sought pursuant to 28 U.S.C. §§ 2201; 2202, and the common law of the State of Ohio.

6. Compensatory and punitive damages may be awarded under Title VII; R.C. 4112.99; and the common law of the State of Ohio.

7. Costs and attorneys' fees may be awarded pursuant to the 42 U.S.C. § 1988; Title VII, 42 U.S.C. § 2000e-5(k); Fed. R. Civ. P. 54; and the common law of the State of Ohio.

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because the claims arose in and around Franklin County, Ohio, where Defendant Smile CDR, Inc. remotely employed Plaintiff Kevin Berdin at all times material to this Complaint and the materially adverse actions described herein occurred.

9. Venue is also proper pursuant to 28 U.S.C. § 1332, which grants federal court jurisdiction in all civil actions between citizens of different states and between a citizen of a state and a subject of a foreign state if the amount in controversy exceeds $75,000.

III. **Parties**

10. Plaintiff Kevin Berdin ("Mr. Berdin" or "Berdin") was a 45-year-old Caucasian male whose wife and step-children are African American.

11. At all relevant times herein, Mr. Berdin was a resident of Franklin County, Ohio and was employed by Defendant Smile CDR, Inc. between September of 2021 and December of 2022.

12. Defendant Smile CDR, Inc. ("Smile CDR" or "Smile") is a corporation incorporated under the laws of the State of Delaware; headquartered in Toronto, Ontario, Canada; and has a principal place of business in Austin, Texas. Smile employs, on a daily basis each week, at its various locations in the United States, between 200 - 500 employees. Smile employed Mr. Berdin in a W-2 capacity.

13. Defendant Smile CDR rebranded to "Smile Digital Health" in October of 2022.

14. On or about December of 2022, Mr. Berdin was terminated from his position by Defendant on the basis of race discrimination and retaliation.

**IV.    Facts**

15. Defendant Smile CDR was a technology company dealing in the storage and conveyance of healthcare data.

16. Plaintiff Kevin Berdin is a Caucasian male whose wife and step-children are African-American.

17. Defendant hired Mr. Berdin on or about September 13, 2021 as a Director of Business Development, where Mr. Berdin was responsible for generating new clients and expanding Defendant's relationship with existing clients; Mr. Berdin earned a salary of $145,000 per year plus commission.

18. Mr. Bedin was employed as a remote worker, and he worked exclusively out of his home in Franklin County, Ohio.

19. Mr. Berdin's commission compensation included 5% of the value of each deal that Mr. Berdin closed for Defendant.

20. During the course of his employment by Defendant, Mr. Berdin generally completed his job duties satisfactorily and had no remarkable record of discipline.

21. Mr. Berdin received outstanding feedback from no fewer than three superiors and was verbally told that his HR review at the end of November 2021 would be positive.

22. Mr. Berdin was generally well-liked by his colleagues and enjoyed his work.

23. In or about October of 2021, Defendant assigned a new supervisor, Bob Kaftan ("Kaftan"), to oversee Mr. Berdin.

24. Kaftan was an approximately 63-year-old Caucasian male.

25. Kaftan's supervisory position was such that he exercised control over which income-earning leads were assigned to each of his subordinates.

26. Mr. Berdin received potential income-earning assignments and leads from Kaftan.

27. Kaftan became aware of Mr. Berdin's African American spouse and children on or about December of 2021 through casual conversation with Mr. Berdin.

28. Defendant's discriminatory treatment of Mr. Berdin began shortly after Kaftan learned of Mr. Berdin's mixed-race household.

29. From approximately February 2022 to December of 2022, Kaftan wielded his authority to intentionally create a hostile working environment for Mr. Berdin by regularly making racist and hateful comments about Mr. Berdin's African American spouse and step-children:

    a. Kaftan referred to Berdin's wife as "a Negris."

    b. In or about February of 2022, Kaftan made it clear to Mr. Berdin that Kaftan no longer wanted Berdin on his team because Kaftan wanted to bring in "his own people."

    c. Kaftan informed Mr. Berdin that Kaftan was going to "get rid of [Mr. Berdin] one way or another."

    d. On or about February 23, 2022, Kaftan commented that he thought that Mr. Berdin's wife must not be very intelligent, but that she was "a perfect match for [Mr. Berdin]."

    e. On or about March 6, 2022, Kaftan asked Mr. Berdin if Mr. Berdin was homosexual and stated that Mr. Berdin must be homosexual because his wife "looks like a man."

f. On or about March 6, 2022, Kaftan further told Mr. Berdin that he thought Mr. Berdin's wife should act in the "Liberty Mutual" advertisements to play in the "Caveman role."

g. On or about July 13, 2022, Kaftan observed a photograph of Mr. Berdin's family and remarked that Mr. Berdin stood out as the only one in the picture who "looked human."

h. On or about July 13, 2022, Kaftan again stated "are you kidding me with this [wife] of yours? Zoo animals could do better."

i. Kaftan further commented on Mr. Berdin's step-children, stating that he believed they would grow up to be unemployed or criminals.

30. Kaftan's racial insults about Mr. Berdin's spouse and children caused Mr. Berdin immense stress and anxiety, making it difficult for Mr. Berdin to perform his job functions.

31. Kaftan interfered with Mr. Berdin's job functions, assigning Mr. Berdin low value deals while granting more lucrative deals to subordinates who were known to not belong to Mr. Berdin's protected class.

32. While Kaftan saved the worst of his insults for private verbal meetings with Mr. Berdin, Kaftan's misconduct was widely known among other Smile employees and Smile management failed to take meaningful action against it.

33. Mr. Berdin lived in fear that reporting Kaftan's abuses would result in further retaliation against Mr. Berdin.

34. On or about March 7, 2022, Mr. Berdin had a formal sit-down meeting with Defendant's Chief of Human Resources Tracy Curnuck ("Curnuck") during a company event in Florida.

5

35. During the meeting on or about March 7, 2022, Mr. Berdin verbally complained to Curnuck about Kaftan's racial harassment and misconduct.

36. Curnuck and Kaftan were known to be close friends.

37. Curnuck dismissed Mr. Berdin's complaints, telling Mr. Berdin that she had known Kaftan for more than a year and that Kaftan had enjoyed a long careerCurnuck told Mr. Berdin that she had received no other complaints about Kaftan and that if Mr. Berdin had a problem with Kaftan, the problem was with Mr. Berdin.

38. Curnuck failed to document, report, or investigate Mr. Berdin's complaint.

39. After Kaftan's first fusillade of racial insults in or about February of 2022, Mr. Berdin spoke privately with another Smile supervisor with whom Mr. Berdin was close, wherein Mr. Berdin explained that Kaftan's misconduct was making Mr. Berdin's life a "living hell."

40. Working with this supervisor, Mr. Berdin then formally requested to move off of Kaftan's direct team.

41. Defendant approved Mr. Berdin's transition onto a different team in or about June or July of 2022, after which Mr. Berdin's title became "Partnership Relationship Manager"; Mr. Berdin's pay remained the same but his role now involved developing new partnerships between Defendant and other businesses.

42. Mr. Berdin was still compelled to interact with Kaftan after Mr. Berdin's departure from Kaftan's team.

43. Kaftan's harassment of Mr. Berdin escalated after Kaftan learned that Mr. Berdin had requested the re-assignment.

44. Mr. Berdin was successful in his new role.

45. Despite his short tenure and Kaftan's continued harassment, Mr. Berdin worked on developing several large deals.

46. Kaftan's race-based harassment continued to be so intolerable that Mr. Berdin again complained to Curnuck over an official phone call in or about May or June of 2022.

47. Again, Curnuck failed to document, report, or investigate Mr. Berdin's complaint.

48. In or about December of 2022, shortly before Mr. Berdin was due to receive a large commission payment, Defendant informed Mr. Berdin that his employment was being terminated.

49. Kaftan and Curnuck, the two individuals most closely linked with the racial discrimination and harassment against Mr. Berdin, were terminated by Defendant on the same day as Mr. Berdin.

50. Similarly situated employees under Kaftan who did not have interracial relationships with African American spouses or children did not suffer from the same type of arbitrary reviews, hostile conduct, or other adverse actions suffered by Mr. Berdin.

51. These similarly situated individuals outside of Plaintiff's protected class who did not engage in protected activities were generally treated more favorably than Plaintiff Kevin Berdin and not subjected to the conduct underlying Mr. Berdin's claims of hostile work environment based on race.

52. As a direct and proximate result of Defendant's failure to remedy a hostile work environment based on race after having been notified on several occasions by Plaintiff Kevin Berdin and declining to and/or otherwise failing to take any meaningful action intended to end the harassment, Mr. Berdin has suffered and continues to suffer from emotional distress and hardship, frustration, and humiliation.

53. As a direct and proximate result of Defendant's discrimination in terminating Kevin Berdin from his employment because of his spouse's race and/or in retaliation for his protected activity in complaining about and/or opposing race discrimination and a discriminatory severe or pervasive harassment leading to a hostile work environment, Mr. Berdin suffered and continues to

7

suffer economic loss in the form of lost income arising out of his loss of salary and commission compensation, promotions, and benefits afforded by his employment with Defendant.

54. As a direct and proximate result of Defendant's adverse actions against Plaintiff Kevin Berdin because of his spouse's race and/or in retaliation for his protected activity in complaining about and/or opposing race discrimination and/or discriminatory severe or pervasive harassment leading to a hostile work environment, Mr. Berdin has suffered and continues to suffer from emotional distress, frustration, and humiliation.

55. As a direct and proximate result of Defendant's adverse actions against Plaintiff Kevin Berdin because of his spouse's race and/or in retaliation for his protected activity in complaining about and/or opposing race and/or sex discrimination and/or discriminatory severe or pervasive harassment leading to a hostile work environment, Defendant acted with conscious disregard towards Mr. Berdin's rights to remain free from discrimination and retaliation, even though its conduct had a great probability of causing Mr. Berdin economic and/or emotional hardship and did cause him such harm.

## V.     Claims

### A.     Count I: Violation of Title VII of Civil Rights Act of 1964

56. Paragraphs 1 through 55 are incorporated herein as if fully set forth.

57. By failing to remedy a severe and/or pervasive hostile work environment based on race as to the Plaintiff Kevin Berdin, Defendant violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*.

58. By terminating Plaintiff Kevin Berdin from his employment for pretextual reasons because of his spouse's race and/or in retaliation for making complaints about and/or opposing conduct he sincerely and reasonably perceived to be racial discrimination and severe harassment

8

leading to a hostile work environment, Defendant violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*

59.     By imposing upon Plaintiff Kevin Berdin materially adverse employment actions or otherwise denying him equal opportunities and/or treatment for pretextual reasons because of his spouse's race and/or in retaliation for making complaints about and/or opposing conduct he sincerely and reasonably perceived to be racial discrimination and severe harassment leading to a hostile work environment, Defendant violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*

**B.     Count II: Violation of Ohio Laws Against Discrimination**

60.     Paragraphs 1 through 59 are incorporated herein as if fully set forth.

61.     By failing to remedy a severe and/or pervasive hostile work environment based on race as to the Plaintiff Kevin Berdin, Defendant violated the Ohio Laws Against Discrimination, R.C. 4112.

62.     By terminating Plaintiff Kevin Berdin from his employment for pretextual reasons because of his spouse's race and/or in retaliation for making complaints about and/or opposing conduct he sincerely and reasonably perceived to be racial discrimination and severe harassment leading to a hostile work environment, Defendant violated the Ohio Laws Against Discrimination, R.C. 4112.

63.     By imposing upon Plaintiff Kevin Berdin materially adverse employment actions or otherwise denying him equal opportunities and/or treatment for pretextual reasons because of his spouse's race and/or in retaliation for making complaints about and/or opposing conduct he sincerely and reasonably perceived to be racial discrimination and severe harassment leading to a hostile work environment, Defendant violated the Ohio Laws Against Discrimination, R.C. 4112.

**C.     Count III: Violation of the Reconstruction Era Civil Rights Act**

64.     Paragraphs 1 through 63 are incorporated herein as if fully set forth.

65. By failing to remedy a severe and/or pervasive hostile work environment based on race as to the Plaintiff Kevin Berdin, Defendant violated the Reconstruction Era Civil Rights Act, 42 U.S.C. § 1981.

66. By terminating Plaintiff Price from his employment for pretextual reasons because of the race of his spouse, Defendant violated the Reconstruction Era Civil Rights Act, 42 U.S.C. § 1981.

67. By imposing upon Plaintiff Kevin Berdin materially adverse employment actions or otherwise denying him equal opportunities and/or treatment for pretextual reasons because of the race of his spouse, Defendant violated the Reconstruction Era Civil Rights Act, 42 U.S.C. § 1981.

**VI . Prayer for Relief**

WHEREFORE, Plaintiff Kevin Berdin is entitled to and prays for the following relief:

A. a declaration that Defendant violated Title VII of the Civil Rights Act, the Ohio Laws Against Discrimination, and/or the Reconstruction Era Civil Rights Act;

B. equitable relief of reinstatement to Mr. Berdin's prior position in the Defendant's company with all applicable seniority and other benefits restored;

C. wages, salary, employment benefits, and other compensation denied or lost, exceeding $75,000, because of Defendant's violations;

D. compensatory and punitive damages;

E. prejudgment and post-judgment interest:

F. costs and attorneys' fees; and

G. such other relief as the Court deems fair and equitable.


Respectfully submitted,

**/s/ Chanda L. Brown**
Chanda L. Brown (0081076)
(*cbrown@waltonbrownlaw.com*)
WALTON + BROWN LLP

395 E. Broad Street, Suite 200
Columbus, OH 43215
614-636-3476
Fax: 614-636-3453
*Attorney for Plaintiff Kevin Berdin*